# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Jessica Dellarussiani, *et al.*,

      Plaintiffs,

                                       Case No. 2:07-CV-00253

v.                                   JUDGE SMITH

                                     Magistrate Judge Abel

Ed Donnelly Enterprises, Inc., *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiffs allege that they were not paid the minimum hourly wage and overtime compensation due them in connection with their employment at two McDonald's facilities in Bellefontaine, Ohio in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"). Plaintiffs also assert a state law claim under O.R.C. Chapters 4111 and 4113. This matter is currently before the Court on Defendants' Motion for Partial Summary Judgment and to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Doc. 12). Additionally, Plaintiffs have filed a Motion to Strike (Doc. 14). For the reasons that follow, Defendants' Motion for Partial Summary Judgment and to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Doc. 12) is **GRANTED**, and Plaintiffs' Motion to Strike (Doc. 14) is **DENIED.**

## I.  FACTUAL BACKGROUND

Plaintiffs Jessica Dellarussiani, Derrick Kinchen, Chad Larson, Jill Puff, Debbie Brunke, and Nathan Buscher (collectively "Plaintiffs") are former employees of two McDonald's facilities in Bellefontaine.  Defendants Ed Donnelly and Ed Donnelly Enterprises, Inc. ("Defendants") owned and operated the at-issue McDonald's facilities.

Plaintiffs allege that, while working for Defendants, they were not paid all of the regular wages and overtime pay they were due under federal and Ohio law.  Plaintiffs originally opted in as plaintiffs in a related action still pending before this Court, captioned *O'Brien v. Ed Donnelly, Inc.,* Case No. C2-04-085 ("*O'Brien*").  That action was also brought on behalf of the plaintiffs by the Ferron & Associates law firm.

On November 8, 2004, *O'Brien* was conditionally certified as a collective action under § 216(b) of the FLSA.  At the conclusion of discovery, ten *O'Brien* plaintiffs remained*,* including the two named plaintiffs and eight opt-in plaintiffs.  After extensive discovery, the Court decertified *O'Brien* as a collective action based upon the Court's finding that plaintiffs did meet their burden to prove that the plaintiffs were similarly situated.  After the *O'Brien* action was decertified as a collective action, Plaintiffs' counsel filed this lawsuit on behalf of six of the former opt-in plaintiffs on March 22, 2007.

On May 24, 2007, Defendants made a Rule 68 Offer of Judgment to plaintiffs.  That Offer of Judgment provided:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendants Ed Donnelly Enterprises, Inc. and Ed Donnelly hereby offer judgment to be taken against them on Counts One and Two of the plaintiffs' complaint in this action in the following amounts as to each plaintiff, plus costs accrued to date and reasonable attorneys' fees:
>
> Brunke          $146.04

2

| | |
|---|---|
| Buscher | $71.32 |
| Kinchen | $148.64 |
| Larson | $1953.54 |
| Wagner | $196.36 |
| West | $3,626.30 |

This Offer of Judgment may be accepted by any one or more of the plaintiffs and is not conditioned upon agreement of all plaintiffs.  If this offer is accepted by one or more plaintiffs, the Court would at the appropriate time determine the appropriate amount of attorneys' fees, if any, to be awarded to plaintiffs' counsel.  This Offer of Judgment is made for the purposes specified in Rule 68 and is not to be construed either as an admission that defendants are liable in this action or that plaintiffs have suffered any recoverable damages.

Defendants based the dollar amounts in their Offer of Judgment on the sworn affidavits filed by each of the plaintiffs in the *O'Brien* case and also on the "damage calculations" prepared by Plaintiffs' counsel in the *O'Brien* case.  Though Defendants dispute whether Plaintiffs are actually owed any wages, Defendants assert that the Offer of Judgment was made to end additional spending of attorneys' fees and Court resources.

Plaintiffs' counsel allege that the May 24, 2007 Offer of Judgment was rejected because it failed to account for (1) the damages Plaintiffs allege they are entitled to receive under O.R.C. § 4113.15(B); and (2) attorneys' fees and costs.

On June 29, 2007, Defendants filed a Motion for Partial Summary Judgment and to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Doc. 12).  By this Motion, Defendants ask this Court to dismiss Counts One and Two of the Plaintiffs' Complaint for lack of subject matter jurisdiction.  To support their Motion, Defendants rely on the admissibility of the May 24, 2007 Offer of Judgment.  Plaintiffs contest Defendants' reliance and have filed a Motion to Strike Defendants' Offers of Judgment and All References Thereto (Doc. 14).   In addition, Defendants ask the Court to grant summary judgment in their favor with respect to Count Three of the Complaint.

3

## II.  Analysis

**A.    Counts One and Two, Violations of Federal and State Wage and Overtime Payment Laws.**

Counts One and Two of Plaintiffs' Complaint present different statutory bases, but just one theory of recovery — that is, both the state and federal statutes protect an employee's right to receive minimum wage and overtime pay.  (Compl. ¶¶ 19-22). Though the Ohio statute provides a cause of action for recovering unpaid overtime pay, the federal statute provides, under the proper circumstances, the additional remedies of liquidated damages and recovery of attorney fees.

Defendants argue that their Rule 68 Offer of Judgment renders Counts One and Two moot because the offer was in the amount of the maximum possible recovery to Plaintiffs. (Defendants' Motion for Partial Summary Judgment and to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Hereinafter "Def.'s Mot.") at 6-7).  Consequently, Defendants have moved to dismiss Counts One and Two pursuant to 12(b)(1) for lack of subject matter jurisdiction. *Id.*

Plaintiffs advance two primary arguments in support of their position that dismissal would be improper.  First, Plaintiffs argue that the Offer of Judgment is inadmissible, and cannot be considered for purposes of Defendants' Motion. (Pl.'s Mot. to Strike at 7-9; Pl.'s Memo. in Opp. at 19-21).  Second, Plaintiffs argue that their rejection of Defendants' May 24, 2007 Offer of Judgment did not render Plaintiffs' claims moot.  (Pl.'s Memo. in Opp. at 21-26).

**1.    Is a Rule 68 Offer of Judgment Admissible on a 12(b)(1) Motion to Dismiss?**

4

Plaintiffs first contend that Defendants' Offer of Judgment should be excluded because the Court "cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted." (Pl.'s Memo. in Opp. at 16-17).  Plaintiff, however, mistakenly cites the standard for a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) rather than the standards applicable to motions brought pursuant to Fed. R. Civ. P. 12(b)(1).

The Sixth Circuit has recognized that "[m]otions to dismiss under 12(b)(6) for failure to state a claim generally are distinct, procedurally and substantively, from motions to dismiss under 12(b)(1)." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In describing motions brought under Rule 12(b)(1), the Court distinguished between *facial* attacks on the complaint, which question jurisdiction based solely on the allegations of the complaint, and *factual* attacks, in which facts outside the pleadings are offered that call into question whether subject matter jurisdiction exists.

> A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, *when a court reviews a complaint under a factual attack, as here, no presumptive truthfulness applies to the factual allegations. . . . When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.*

*Id*.  (emphasis added) (citations omitted).  *See also United States v. Burnes*, 186 F.3d 717, 722 (6th Cir. 1999) (where factual attack, district court is "empowered to weigh the evidence and no presumptions apply as to the truthfulness" of the plaintiffs' allegations).

Defendants' motion to dismiss is based on the lack of case or controversy resulting from

the Defendants' Offer of Judgment.  Such a motion is a "factual attack," since such an Offer would never appear in the allegations of the Complaint and, in fact, generally arises only after a complaint has been filed.  Thus, this Court is permitted to consider evidence extrinsic to the Complaint.

Plaintiffs next argue that Defendants' Offer of Judgment is inadmissible under Fed. R. Civ. P. 68.  Plaintiffs claim that *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291 (6th Cir. 1989) and *Delta Airlines, Inc. v. August*, 450 U.S. 346 (1981) support their position.  (Pl.'s Mot. to Strike at 9; Pl.'s Reply at 3-4; Pl.'s Memo. in Opp. at 22).  Plaintiffs quote *Hopper* for the proposition that "evidence of an offer that was not accepted is not admissible except in a proceeding to determine costs." (Pl.'s Memo. in Opp. at 21).  This language represents not a conclusion of the Sixth Circuit, but rather a recitation of Rule 68.  The second passage of *Hopper* quoted by Plaintiffs contains the Sixth Circuit's explanation of how Rule 68 operates with regard to evidence of an offer of judgment.  The Court states,

> The rule contemplates that whether jury or judge *tries the case*, the decisionmaker will be unaware of the extraneous fact that an offer of judgment has been made. This ensures that the *trier of fact* will not be influenced in its evaluation of the case by any knowledge of a rejected offer or the consequences thereof..

*Hopper,* 867 F.2d at 295 (emphasis added). The *Hopper* opinion makes clear that the Sixth Circuit's concern in *Hopper* was employing Rule 68 to prevent prejudice at trial against the party offered judgment.  Similarly, in *Delta Airlines,* as in *Hopper,* the Supreme Court was merely quoting the language from Rule 68 rather than passing on the issue of admissibility for the purposes of determining subject matter jurisdiction. 450 U.S. at 350.

The plain language argument put forth by Plaintiffs in the instant case was raised and rejected in *Thomas v. Law Firm of Simpson & Cybak*, 2006 WL 2037329 (N.D.Ill 2006) *aff'd*,

2007 WL 212270, (7th Cir. 2007). The district court in *Thompson* explained:

> Courts . . . interpret Rule 68 as they do Rule 408 of the Federal Rules of Evidence
> . . . [which] bars evidence of offers to compromise when used "to prove liability .
> . . or [the] invalidity of the claim or its amount." Fed. R. Evid. 408. The rule
> "does not require exclusion when the evidence is offered for another purpose . . .
> ." *Id*. Here, Defendants have not raised the Offer of Judgment to confirm or
> attack the validity of Plaintiff's claim, but to demonstrate that a case or
> controversy no longer exists.

*Id*. at *4. The Seventh Circuit affirmed the district court's consideration of the offer of judgment

for the limited purpose of determining jurisdiction, noting "Rule 68 is construed in harmony with

Rule 408." 2007 WL 212270 at *3 (*citing* Fed. R. Evid. 408, Advisory Committee Notes).

This Court agrees with the Seventh Circuit's analysis in *Thompson*. The *Thompson*

Court's consideration of the offer of judgment to determine subject matter jurisdiction is

consistent with a federal court's broad discretion in dismissing actions for lack of subject matter

jurisdiction. The Federal Rules provide: "Whenever it appears by suggestion of the parties or

otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the

action." Fed. R. Civ. P. 12(h)(3). The plain language of the Rule states that a federal court does

not have the option of hearing a case over which the court lacks subject matter jurisdiction. By

providing that a court "shall" dismiss an action "whenever" it appears the court lacks subject

matter jurisdiction, the Rule makes clear that dismissal is not an option to be considered, but

rather a command to be followed. Evidence of a lack of subject matter jurisdiction, even in the

form of a Rule 68 offer of judgment, must be admitted for the court to follow the clear command

of the Federal Rules and Supreme Court case law, which holds that federal courts have "neither

the power to render advisory opinions nor 'to decide questions that cannot affect the rights of

litigants in the case before them.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (*quoting North

Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

7

Further, the Federal Rules state, "These rules . . . shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. Pro. 1. Though Rule 68 specifically applies to admissibility of evidence of a Rule 68 offer, and Rule 1 is only a blanket statement regarding general application of the Rules, Rule 1 may offer guidance where, as here, one rule conflicts with another.  The strict application of Rule 68 in this case conflicts with the admonition of Rule 12(h)(3) that a federal court may not hear a case over which it lacks subject matter jurisdiction.  In such a circumstance, the general guideline that the Rules should be interpreted to secure the "just, speedy, and inexpensive determination of every action" operates to tip the scales in favor of allowing admissibility.  This fact is made clearer by the Supreme Court's observation in *Delta Airlines* that "the purpose of Rule 68 is to encourage the settlement of litigation." *Id.* at 352.  This Court does not presume that the Supreme Court would automatically favor strict adherence to the statutory language in a case such as this, where strict adherence would defeat the statutory purpose.

A concrete example of the consequence of denying admissibility further explains why this Court supports the proposition that evidence of a Rule 68 offer of judgment should be admissible for the purpose of deciding subject matter jurisdiction.  Should evidence of such an offer remain inadmissible, this Court would create the real possibility that a federal court would preside over a lengthy and expensive trial regarding complex issues of law only to have plaintiffs recover less than what they were offered before trial began.  Such a result hardly fulfills Rule 68's purpose of  "encourag[ing] the settlement of litigation." *Delta Airlines,* 450 U.S. at 352. Because the Federal Rules embody the broad policy of not only justice but also efficiency in federal litigation, evidence of the Defendant's offer of judgment is admissible.

Therefore, Plaintiffs' Motion to Strike Defendants' Offer of Judgment (Doc 14) is

**DENIED.**

      **2.**      **Did Defendants' Rule 68 Offer of Judgment Render Plaintiffs' Claims Moot?**

Having determined that evidence of Defendant's Rule 68 offer of judgment to Plaintiffs is admissible, this Court finds that Plaintiffs' claim is now moot.

According to Article III of the U.S. Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. U.S. Const., art. III, § 2; *Deakins v. Monaghan*, 484 U.S. 193 (1988). "A federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (*quoting North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). It is not enough that the case or controversy exists at the time the complaint is filed: "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser*, 422 U.S. at 401 (1975) (*quoting Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (internal quotation marks omitted)). For a case or controversy to exist at all stages of review, "The parties must have a personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990).

As Judge Posner noted in a similar case, "You cannot persist in suing after you've won." *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999). This Court agrees, and so do a number of other courts. *See, e.g.*, *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) (dismissing complaint where plaintiff rejected offer of judgment that provided the maximum statutory relief obtainable); *Abrams v. Interco, Inc.*, 719 F.2d 23, 32 (2d Cir. 1983) (affirming district court's dismissal of plaintiff's claim where plaintiff had rejected an offer of judgment made by defendant with a monetary value "much more than plaintiff could have obtained by suit."); *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir.1991) (holding that "once

9

the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate."); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (dismissing plaintiff's claim because defendant had offered plaintiff the full amount of damages).

Plaintiffs argue that Defendants' Rule 68 Offer of Judgment cannot render their claims moot because the offer "fails to offer compensation to Plaintiffs for a majority of the damages and other monetary recovery to which they are entitled." (Pl.'s Memo. in Opp. at 25). Specifically, Plaintiffs assert that the Offer of Judgment fails to compensate Plaintiffs for (1) the damages Plaintiffs allege they are entitled to receive under O.R.C. § 4113.15(B); and (2) attorneys' fees and costs.

The Court rejects both of these assertions. As discussed more fully below, *see infra* Section II.B, Defendants are entitled to summary judgment on Plaintiffs' claims for liquidated damages pursuant to O.R.C. § 4113.15(B) because there exists a legitimate dispute as to whether Plaintiffs are owed wages. Plaintiffs' second assertion is rejected as flat wrong. The plain and express language of the Offer of Judgment states that the Defendants "hereby offer judgment to be taken against them on Counts One and Two of the plaintiffs' complaint in this action in the following amounts as to each plaintiff, *plus costs accrued to date and reasonable attorney's fees . . . ."* (Defendants' May 24, 2007 Offer of Judgment) (emphasis added). This same or similar language regarding costs and attorneys' fees has been expressly approved by other courts in finding that the Rule 68 offer of judgment moots the action. *See, e.g., Ambalu*, 194 F.R.D. at 452 (E.D.N.Y. 2000) (defendant offered "one thousand dollars ($1,000), the costs of the action, and a reasonable attorney's fee incurred up through the date of the offer as determined by the court."); *Greisz*, 176 F.3d at 1014 (offer of judgment of "$1,200 plus reasonable costs and attorneys' fees").

10

In Counts One and Two, brought under the FLSA and O.R.C. § 4111.01 *et seq.*, the six plaintiffs claim they were not paid $3,071.10 in regular wages and overtime. (*See* Compl. ¶¶ 19-22; Plaintiffs' Affidavits; and "damage calculations" prepared by Plaintiffs' counsel in the *O'Brien* case). When doubled to account for liquidated damages under the FLSA, the maximum amount Plaintiffs could recover is $6,142.20. Defendants' Offer of Judgment, which also accounted for reasonable costs and attorneys' fees, fully satisfies Plaintiffs' claims.

Plaintiffs declined the offer. Plaintiffs cannot deny an offer which fully satisfies their claims and then maintain that they still have a personal stake in the outcome of the lawsuit. Such an assertion strains credibility and needlessly prolongs litigation that was designed to effect the very result that Plaintiffs denied when they rejected the offer of judgment. As a policy matter, allowing Plaintiffs' claim to go forward in spite of the fact that they have been offered all the relief they sought in their complaint only encourages needless litigation to amass attorney's fees. The Supreme Court has made clear that "an interest in attorney's fees . . . is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (*quoting Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990)).

Because Defendants have offered Plaintiffs all the relief they sought, Plaintiffs' claims in Counts One and Two are moot and must therefore be dismissed because this Court lacks subject matter jurisdiction over the claims.

### 3. What is the Proper Disposition Where a Rule 68 Offer of Judgment Effectively Moots the Case?

Though the Circuit Courts agree that an offer of judgment for the full amount a plaintiff seeks moots the case, they disagree about how to dispose of such a case. Judge Easterbrook

stated that a plaintiff loses outright when he or she refuses to honor the defendant's offer to

satisfy the plaintiff's entire demand. *Rand v. Monsanto Corp.*, 926 F.2d 596, 598 (7th Cir. 1991).

Agreeing with Judge Easterbrook, Judge Posner explained:

> You cannot persist in suing after you've won.  Lawyer Longo may have thought
> that he had something to gain by pressing on–additional attorney's fees.  But if
> that is what he thought, he was mistaken.  Once a party has won his suit and
> obtained the attorney's fees that were reasonably expended on winning, additional
> attorney's fees would not be *reasonably* incurred.  So by spurning the defendant's
> offer, Longo shot both himself and his client in the foot.  He lost his claim to
> attorney's fees by turning down the defendant's offer to pay them, and Greisz lost
> $1,200.

*Greisz* at 176 F.3d at 1015; *accord Rand*, 926 F.2d at 597.

Courts in the Second Circuit have departed slightly from the Seventh Circuit's outright

dismissal of the action, electing instead to enter judgment in the plaintiff's favor in accordance

with the defendant's Rule 68 offer of judgment.  *See Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453

(E.D.N.Y. 2000); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F.Supp.2d 157

(E.D.N.Y. 2003).

This Court has expressed a preference for the *Ambalu* approach to compelling plaintiffs

to accept the offers of judgment, so long as the parties agree on the appropriate monetary value

of the award authorized by the statute and unique to the plaintiffs' circumstances. *See Yates v.*

*Applied Performance Technologies*, 205 F.R.D. 497, 502-03 (S.D. Ohio 2002) (Holschuh, J.).

Arguably, employing Judges Easterbrook and Posner's approach would better deter plaintiffs'

attorneys from rejecting satisfactory Rule 68 offers of judgment in order to continue amassing

attorneys' fees.  This Court believes, however, that compelling a plaintiff to accept a defendant's

offer of judgment also discourages attorneys from needlessly amassing fees while better

protecting plaintiffs who may not have been consulted prior to their counsel's rejection of the

defendant's offer.

Accordingly, this Court will adopt a remedy similar to that reached by the *Ambalu* court. The Court will **GRANT** Defendants' motion to dismiss Counts One and Two, but enter **JUDGMENT IN FAVOR OF PLAINTIFFS** in accordance with Defendants' May 24, 2007 Rule 68 Offer of Judgment.

**B.      Count Three, Violation of Ohio Revised Code § 4113.15(B)**

Plaintiff's O.R.C. § 4113.15 claim is reviewed by this Court in its exercise of supplemental jurisdiction. *See Weeks v. Portage County Exec. Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000) (noting that district courts have discretion to exercise supplemental jurisdiction over state law claims where the related federal claim has been dismissed); *Musson Theatrical, Inc.*, *v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("[T]here is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims").

In Count Three of the Complaint, Plaintiffs seek liquidated damages pursuant to Ohio's Prompt Pay Act, O.R.C. § 4113.15.  Defendants argue they are entitled to summary judgment on Count Three because there exists a legitimate dispute as to whether Plaintiffs are owed wages. The Court agrees with Defendants.

**1.      Summary Judgment Standard**

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is not appropriate if the dispute about a material fact is genuine; "that

is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate,
however, if the opposing party fails to make a showing sufficient to establish the existence of an
element essential to that party's case and on which that party will bear the burden of proof at
trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial
Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable
inferences in favor of the non-moving party, and must refrain from making credibility
determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.
133, 150-51 (2000).[1]  The Court disregards all evidence favorable to the moving party that the
jury would not be required to believe.  *Id.*  Stated otherwise, the Court must credit evidence
favoring the non-moving party as well as evidence favorable to the moving party that is
uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and
*Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new
era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).

---

[1]  *Reeves* involved a motion for judgment as a matter of law made during the course of a
trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56.
Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable
difference, however, is that in ruling on a motion for judgment as a matter of law, the Court,
having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S.
at 150.  In contrast, in ruling on a summary judgment motion, the Court will not have heard all of
the evidence, and accordingly the non-moving party has the duty to point out those portions of
the paper record upon which it relies in asserting a genuine issue of material fact, and the court
need not comb the paper record for the benefit of the non-moving party.  *In re Morris*, 260 F.3d
654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for
summary judgment motions.

The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not sufficient for the non-moving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Id.* at 1479-80.  That is, the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**2.    Discussion**

Ohio Revised Code Section 4113.15 requires an employer to pay "wages earned" by employees no less often than twice per month and provides for liquidated damages in certain circumstances.  However, contrary to Plaintiffs' averment, liquidated damages are not awarded on the basis of strict liability.[2]  Subsection (B) of the Ohio statute provides, in pertinent part:

---

[2]Plaintiffs reliance on *Twaddle, et al. v. RKE Trucking Co., et al.,* 2006 WL 840388 (S.D. Ohio) (Sargus, J.) is misplaced.  *Twaddle* does not contain any analysis or interpretation of O.R.C. § 4113.15.  Further, the *Twaddle* defendant-employer *conceded liability* on plaintiffs' claims regarding attendance at company meetings and submitting to random drug tests, and the

> Where wages remain unpaid for thirty days beyond the regularly scheduled
> payday or, in the case where no regularly scheduled payday is applicable, for
> sixty days beyond the filing by the employee of a claim . . . *and no contest* [,]
> *court order or dispute of any wage claim . . . exists accounting for nonpayment*,
> the employer, in addition, as liquidated damages, is liable to the employee in an
> amount equal to six per cent of the amount of the claim still unpaid and not in
> contest or disputed or two hundred dollars, whichever is greater.

O.R.C. § 4113.15 (emphasis added).  Thus, if a legitimate dispute over a wage claim exists,

Section 4113.15 does not provide a basis for a liquidated damages award. *See e.g., Jones v.*

*Select Industries Corp*. 2006 WL 1705201, *6 (S.D. Ohio 2006) (Rose, J.) ("[W]here the

employer disputes the wage claim, no liquidated damages are due [under O.R.C. § 4113.15].)."

*See also Haines & Company, Inc. v. Stewart*, 2001 WL 166465, *3 (Ohio App. 5 Dist. 2001)

(affirming trial court's holding that § 4113.15 does not apply where "a legitimate dispute exists

between the parties as to the payment of the accrued unpaid [wages]."); and *Fridrich v. Seuffert*

*Construction Co., Inc.*, 2006 WL 562156, *4 (*quoting Guspyt v. Twin Health Care Center*,

Tuscarawas App. No. 97AP060040 (1997) ("Liquidated damages are appropriate only when 'no

contest court order or dispute of any wage claim . . . exists.'")).  For example, in *Fridrich*, the

court found that there was a genuine dispute about whether employee was entitled to unused

vacation time he claimed. *Id*.  The *Fridrich* court consequently dismissed employee's claim for

liquidated damages under O.R.C. § 4113.15 and explained:

> The fact that we have found that [employee] is entitled to unused vacation pay *if*
> he is found to be a salaried office employee is not determinative as to whether a
> dispute was actually present.  Here, a dispute existed as to whether [employer's]
> vacation policy required the payout for unused vacation days.  Since an actual
> dispute existed as to [employee's] unused vacation pay, we find that [employer] is
> not liable for liquidated damages.

---

*facts* were undisputed as to plaintiffs' remaining claims.  *Id*. at *6.

16

*Id.*

Based on foregoing interpretation of O.R.C. § 4113.15, the Court must now examine the wage claims of each of the plaintiffs to determine whether or not a legitimate dispute exists.

It is undisputed that Plaintiffs were paid in accordance with the Defendant EDE's timekeeping records. Plaintiffs contend, however, that they worked some time "off the clock" for which they have not been paid, and/or that their time records were improperly altered to deprive them of pay. (Compl. ¶¶ 24-25). Defendants have investigated these allegations, and continue to believe that each of the plaintiffs were paid all of the wages due to them. (Def.'s Mot. at 12).

### a.     Plaintiff Brunke

Plaintiff Brunke seeks damages for a total of about eleven hours she is alleged to have worked "off the clock" over a several month period. Plaintiff Brunke testified, however, that she was never asked to work off the clock. (Brunke Depo. at 58). She also testified that she always clocked in when she came to work, clocked out when she left work and then back in, for every break she took. (*Id.* at 39). She further testified that it was her responsibility to punch in and out properly, that no one else ever punched in or out for her, and that no one ever told her to punch in or out at a different time than the time she actually started or stopped working. (*Id.* at 42). On these grounds, Defendants dispute that Plaintiff Brunke worked additional hours off the clock.

The Court finds that this evidence demonstrates a reasonable basis upon which Defendants have disputed Plaintiff Brunke's claims.

### b.     Plaintiff (Wagner) Puff

Plaintiff Puff seeks damages for a total of eight and one-half hours alleged to have been

worked on June 22, 2004, but not reflected in the time punches for that day.  However, when

Plaintiff Puff was presented at her deposition with the schedule for June 22, 2004, which shows a

line through her name, Plaintiff Puff admitted that she does not know whether she worked on

that day or not. (Puff Depo. at 40-41)  It was EDE's practice to draw a line through an

employee's name on the schedule if a scheduled employee called-off for illness or another

reason. (Donnelly Aff. at ¶ 4).  Plaintiff Puff further testified that she was particular about

clocking in and out, and that it is "highly unlikely" that there would have been a day where she

forgot entirely to clock in and out. (Puff Depo. at 35).  Because Plaintiff Puff has admitted that

she does not know if she even worked on the day for which she is claiming unpaid wages,

Defendants dispute that she is owed additional wages.

The Court finds that this evidence demonstrates a reasonable basis upon which

Defendants have disputed Plaintiff Puff's claims.

### c.    Plaintiff Kinchen

Plaintiff Kinchen seeks a total of $74.32 in unpaid wages he alleges he is owed for

estimated hours worked off the clock. (Kinchen Aff. ¶ 9).  Plaintiff Kinchen testified in

his deposition that he did not perform any analysis of amounts he alleges he was owed until after

he received a letter from plaintiffs' counsel. (Kinchen Depo. at 61).  After receiving that letter,

he

looked through his W-2s and thought he was owed "probably a couple hundred dollars or so."

(*Id*. at 62).  However, when asked what he based that allegation on, he responded that it was

"[j]ust based on the way I looked at the pay stub and how they paid the overtime hours," but also

admitted "maybe I didn't read it right." (*Id*).  When presented with EDE's records containing Plaintiff Kinchen's time punches—the records upon which Plaintiff Kinchen's actual pay was based—he testified that he was not aware of any evidence or facts to suggest that the time punches did not accurately reflect the times he actually worked. (Kinchen Depo. at 77-79).  On these grounds, Defendants dispute that Plaintiff Kinchen is owed additional wages.

The Court finds that this evidence demonstrates a reasonable basis upon which Defendants have disputed Plaintiff Kinchen's claims.

### d.    Plaintiff West

Plaintiff West claims that, during her employment with EDE, she sometimes worked past 12:30 at night, even though she was required as a minor to clock out at 12:30. (West Depo. at 55-56).  Plaintiff West claims that her manager, Dave Clark, asked her to keep working after 12:30. (*Id*. at 55-56, 59-60).  However, Mr. Clark, who no longer works for EDE, testified that there was never an occasion where Plaintiff West clocked out at 12:30 and continued to work. (Clark Depo. at 28).  Mr. Clark further testified that he was never aware of an occasion where Plaintiff West worked off the clock during the time he was her manager. (*Id*. at 35).  To the contrary, he testified that during the times Plaintiff West worked with him, she was either clocked in or her time punches were corrected to reflect the actual time she worked. (*Id*. at 82).  According to Mr. Clark, Ms. West would sometimes sit in the store after her shift was up and wait for other employees who had shared a ride, but she was never instructed to perform work during those times and he did not see her perform any work. (*Id*. at 81-82, 90).  Plaintiff West also testified that, during her employment with EDE, she never brought to anyone's attention the

alleged fact that she was being required to work past 12:30. (West Depo. at 61).  At the time she

left her employment, she did not complain that she had been asked to work off the clock. Rather,

she told EDE she was leaving because her job with EDE was "interfering with other jobs." (*Id*. at

98-99).  And, in fact, Plaintiff West later submitted an employment application to EDE,

indicating that she was interested in being re-employed with the company. (*Id.*).  Because EDE's

manager at the time refutes Plaintiff West's allegations, and because Plaintiff West did not raise

any such concern with Mr. Donnelly or anyone else at EDE during her employment, Defendants

question the truthfulness of her claims, and dispute that she is owed additional wages.

The Court finds that this evidence demonstrates a reasonable basis upon which

Defendants have disputed Plaintiff West's claims.

### e.    Plaintiff Buscher

Plaintiff  Buscher makes two claims, both of which Defendants dispute. First, Plaintiff

Buscher alleges that he was not paid for three hours of orientation he claims took place on May

8, 2002, before he began working at EDE's restaurant. (Buscher Depo. at 54).  Defendant EDE

currently has a several-hour orientation program for new employees. However, that program was

not implemented until Fall 2002. In May 2002, when Plaintiff Buscher started working for

Defendant EDE, EDE had not yet started up that orientation program, and any orientation

employees received at that time occurred during their first shift of work. (Donnelly Aff. at ¶ 6.)

Mr. Donnelly met with Plaintiff Buscher for a few minutes on May 8, 2002, to sign paperwork;

however, Mr. Donnelly did not provide any orientation to Mr. Buscher on that date, nor did he

direct anyone else with EDE to provide orientation on that date. (*Id*. at ¶ 6).  Rather, Mr. Buscher

received orientation during his first shift, for which he was fully paid. (*Id*. at ¶ 5).  Because no

separate orientation occurred, Defendants dispute that Mr. Buscher is entitled to additional compensation.

Second, Plaintiff Buscher claims that his time punches were improperly altered by his managers to insert three half-hour lunch breaks he says he never took. (Buscher Depo. at 47). However, Plaintiff Buscher's managers, Chad Totsch and David Clark, both testified that they never inserted lunch breaks that were not taken by employees. (Totsch Depo. at 63-64; 68-69; Clark Depo. at 25).  Rather, they testified that they would only insert lunch breaks if an employee neglected to punch out for the break, as would sometimes happen. (*Id*.).  In addition, Plaintiff  Buscher never complained about being paid incorrectly during the time he worked at EDE. (Buscher Depo. at 47).  On these grounds, Defendants dispute that Plaintiff Buscher is owed additional wages.

The Court finds that this evidence demonstrates a reasonable basis upon which Defendants have disputed Plaintiff Buscher's claims.

### f.      Plaintiff Larson

Plaintiff Larson testified in his deposition that "the whole time [he] worked [for EDE he] thought [he] was getting paid fairly." (Larson Depo. at 47).  He also testified that he only questioned this after receiving a letter from plaintiffs' counsel. (*Id*. at 8-9).  Plaintiff Larson makes three claims, and Defendant asserts that legitimate disputes exist with respect to all three.

First, the damage calculation originally prepared for Plaintiff Larson sought damages for two meetings for which Plaintiff Larson allegedly was not paid.  However, when questioned in

his deposition regarding this claim, Plaintiff Larson testified he had no reason to think he was

owed money in connection with any meetings:

> Q. Is there a specific meeting that you had in mind that you're alleging damages for?
>
> A. No.
>
> Q. Do you know why that's on the damages summary?
>
> A. No, I do not.
>
> * * *
>
> Q. Can you tell me anything about what you're alleging with respect to that meeting?
>
> A. No, I do not.

(Larson Depo. at 102).  This claim appears to have been dropped by Plaintiffs' counsel.

Second, Mr. Larson claims that his manager required him to work off the clock to travel

to other stores to remedy stock shortages. (Larson Depo. at 58-59).  Although he never raised

this

issue with Ed Donnelly or Karen Donnelly during his employment with EDE, he now claims that

he spent four hours on six different occasions doing this. (*Id*. at 61).  Chad Totsch, Plaintiff

Larson's manager, attests he did *not* tell Plaintiff Larson that he would not be paid for time spent

traveling to other stores to remedy product shortages. (Totsch Aff.).  Defendants therefore

dispute Plaintiff Larson's current claim.

Finally, Plaintiff Larson alleges that his time records were improperly changed to avoid

paying for all the hours he worked.  Though Plaintiff Larson's time records were, on occasion,

edited, Defendants argue that there is no reason to believe these edits were not made for the purpose of correcting them.  For support, Defendants highlight Judge Holschuh's statement in a similar case brought by Plaintiffs' counsel against McDonald's Corporation, "[T]here is nothing inherently improper or unlawful about editing the timekeeping records. . . . [I]t is often necessary to edit the records so that they accurately reflect the actual hours worked in order to ensure that the employees are properly compensated." *Harrison v. McDonald's Corp.*, 411 F. Supp.2d 862 at 870 (S.D. Ohio 2005) (Holschuh, J.).  Defendants further point out that the claim is "particularly suspect because Mr. Larson was, himself, a shift manager with access to the timekeeping system and with responsibility for making sure shift time punches were accurate. (Def.'s Mot. at 18 *citing* Larson Depo. at 23-25).  When questioned in his deposition regarding this claim, Plaintiff Larson testified that he does not recall when he worked on any particular day and the only way he could reconstruct when he worked would be to look at records he claims to have kept but failed to produce in response to the Defendants' requests. (*Id*. at 99-100; 109-10). On these grounds, Defendants dispute that Plaintiff Larson is owed additional wages.

The Court finds that this evidence demonstrates a reasonable basis upon which Defendants have disputed Plaintiff Larson's claims.

### 3.    Conclusion

The foregoing evidence demonstrates a reasonable basis upon which Defendants have disputed each of the plaintiffs' claims, and those disputes account for the nonpayment.  Because of these "actual disputes," O.R.C. § 4113.15 is inapplicable as a matter of law, and Defendants are entitled to summary judgment on Count Three of Plaintiffs' Complaint.

### III.  CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment and to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Doc. 12), and Plaintiffs' Motion to Strike (Doc. 14) is **DENIED.**

Judgment is entered in favor of Plaintiffs in accordance with Defendants' May 24, 2007 Rule 68 Offer of Judgment.  Plaintiffs are entitled to costs and reasonable attorneys' fees incurred through, but not after May 24, 2007.  If the parties cannot agree upon the amount of recoverable attorneys' fees, Plaintiffs are ordered to file a motion with this court setting forth the amount claimed, and detailing the basis for such calculation by **October 31, 2007.**  Defendants are ordered to respond to Plaintiffs' motion by **November 13, 2007.**  There will be no Reply.

The Clerk shall remove this case from the Court's pending cases list.

The Clerk shall remove Documents 12 and 14 from the Court's pending motions list.

**IT IS SO ORDERED.**

    **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**